IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| **Valdeko Ivar Kreil**, ) | Civil Action No. 2:12-2427-DCN-BM |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **Internal Revenue Service,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |



This action has been filed by the Plaintiff, pro se, seeking a refund of his 2010 tax overpayment, which was seized by the Internal Revenue Service to cover taxes found to be due from 2006. The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on December 9, 2013, and the pro se Plaintiff filed his own motion for summary judgment on December 10, 2013. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on December 11, 2013, advising Plaintiff of the importance of the Defendant's motion for summary judgment and of the need for him to file an adequate response.

The Defendant thereafter filed a memorandum in opposition to the Plaintiff's motion for summary judgment on December 20, 2013, and the Plaintiff filed a memorandum in opposition to the Defendant's motion for summary judgment on January 10, 2014. These motions are now

1

before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified complaint[2] that the Defendant Internal Revenue Service disallowed a deduction on his personal tax return for the tax year ending in 2006 following an audit of his 2006 personal income tax return. The deduction at issue relates to "alimony vs. child support". Plaintiff alleges the IRS sent him a letter on December 3, 2009 telling him that he owed $7,886.

Plaintiff alleges that he and his wife began divorce proceedings in 2005, and that as a result of his inability to get representation "it was ruled that I would pay for both alimony and child support". Plaintiff alleges that there are two exceptions to South Carolina statutes relating to child support, one dealing with having a son or daughter over the age of eighteen who is unable to attend college due to severe financial hardship, and the second relating to having a son or daughter who has a physical or mental disability or other exceptional circumstance after the age of eighteen. Plaintiff alleges that in 2006, "two things happened which changed the status of my son and daughter in terms of IRS rules". Plaintiff alleges that his daughter, aged twenty, who was already living most of the year out of state at a college in Indiana, went to study abroad in Japan for her junior year. Plaintiff alleges that IRS rules in 2005 stated that for someone to be considered a dependant, they needed to live more than half of the year at home. Plaintiff further alleges that IRS rules stated that for someone

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The parties have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



to be considered a dependant, they needed to be under the age of twenty-four for the whole calendar year, but that his son turned twenty-four on December 28, 2006.

Plaintiff alleges that the necessary information for the state family court to reconsider the need for child support could not be presented on a timely basis because the first pre-trial court hearing did not occur until several months after the April 15 tax filing date, and that his taxes were filed in good faith.  Plaintiff alleges he treated both payments in his tax return as alimony because Plaintiff did not believe either his son or daughter fit the IRS definition of a dependent.  Plaintiff further alleges that when his divorce was finally finalized in late 2007, the child support payments were removed.

Plaintiff alleges that an IRS agent in Ogden, Utah (Annette Gordon) told him that she had determined that "the claim" was $9,439, but that she would allow $5,889.  Plaintiff apparently further alleges that Gordon told him that any appeal of her ruling would either need to go to the United States District Court of the United States Court of Federal Claims by August 31, 2012.  Plaintiff alleges, however, that a "telephone appeal" was made to Gordon's supervisor, who agreed that he should be given credit for payments made for alimony "as per court decree instead of child support first, alimony second".  Plaintiff alleges that this decreased the amount due to $2,632.54, which was paid on March 16, 2012.  Plaintiff states that it was "unfortunate that the family court was not given accurate information by either my son or daughter when a decision was made at the initial hearing".

Plaintiff seeks an order from this Court directing the IRS to "make whole" his personal tax refund due for his 2010 tax return in the amount of $6,411.13, which "was incorrectly taken after an audit of 2006 personal tax return".  Plaintiff also seeks reimbursement of his $350.00 filing fee.



See generally, Verified Complaint.

In support of summary judgment in the case, the Defendant has submitted an affidavit from Annette Gordon, who attests that she is employed by the Internal Revenue Service as an appeals officer in the Ogden Campus Appeals Office located in Ogden, Utah. Gordon attests that on or about April 15, 2007, Plaintiff filed a Form 1040 for the 2006 tax year, and that on May 26, 2009, the IRS began an examination of this tax return and issued a letter to the Plaintiff requesting documentation to support an alimony deduction of $30,227 claimed on the return. See also, Defendant's Exhibits 1 and 2. Gordon attests that Plaintiff did not respond to this request, and on July 27, 2009, the IRS issued a Notice of Deficiency letter to the Plaintiff proposing to disallow the full amount of alimony reported for 2006. The IRS proposed to assess a tax deficiency of $7,866 together with an accuracy-related penalty of $1,573.20 for the 2006 tax year. See also Defendant's Exhibit 3.

Gordon attests that in response to the Notice of Deficiency, on October 23, 2009 Plaintiff provided a partial copy of a family court order from 2005 as well as a partial copy of a Final Order and Decree of Divorce entered by the same family court in 2008. In response to this information, the IRS informed Plaintiff by letter dated December 3, 2009 that this information did not support a change in the Defendant's position. See also Defendant's Exhibit 4. Plaintiff thereafter requested reconsideration of the IRS's decision disallowing his alimony deduction in a letter dated December 15, 2009, arguing that he was not responsible for child support payments during 2006 because his children were adults and attending college that year. Plaintiff further argued that his final decree of divorce eliminated his child support obligations for that year. See also Defendant's Exhibit 5. Plaintiff also provided complete copies of the family court's initial 2005 order as well as the Final Order and Decree of Divorce from 2008. See also Defendant's Exhibits 6 and 7.



Gordon attests that the family court order from December 21, 2005 required Plaintiff to pay $1,500 per month as temporary alimony commencing December 1, 2005, and $1,500 per month child support commencing December 15, 2005. Gordon attests that the Final Order and Decree of Divorce entered by the court in 2008 terminated Plaintiff's child support obligations, but was not made retroactive to 2006. See also, Id., Exhibits 6 and 7. Gordon attests that pursuant to the terms of the 2005 family court order, Plaintiff was required to pay $18,000 in alimony and $18,000 in child support for 2006, but that on his 2006 tax return Plaintiff claimed an alimony deduction of $18,000 but took a deduction of $30,227, which included some of the $18,000 he paid in child support. Gordon further attests that Plaintiff provided the IRS copies of nineteen checks payable to his spouse in 2006, totaling $27,200, none of which contained notations or references to alimony or child support payments. See also Defendant's Exhibit 8. Gordon attests that, therefore, based on documents Plaintiff provided to the IRS, he substantiated total alimony of $16,700 which could be claimed as an alimony deduction against his income for 2006, and also substantiated $10,500 of court ordered child support payments, which could not be claimed as a deduction against his income. Gordon attests that the IRS then reduced Plaintiff's tax deficiency from $7,866 to $3,550 after allowing a partial alimony deduction of $16,700. See also Defendant's Exhibit 9. Additionally, Plaintiff received nearly all of the claimed refund for 2006 through adjustments and refunds for that year.

Gordon attests that Plaintiff appealed the IRS's decision denying his alimony deduction for 2006 with the IRS Appeals Office, which was sustained by the Appeals Office for the reasons described above. See also Defendant's Exhibit 10.

As attachments to his motion for summary judgment, Plaintiff has included copies of

5



the family court order from December 2005, a copy of his wife's financial declaration from November 2005, copies of some college information apparently relating to his daughter, copies of some South Carolina court decisions, a South Carolina Attorney General's opinion, some documents and photographs relating to his son, a pay stub, what appear to be copies of IRS pamphlets discussing how to claim exemptions for dependants, a copy of his son's birth certificate, a copy of a "To Whom it may Concern" letter certifying that Plaintiff's son was a participant in a Japan study program in 2006-2007, a copy of a letter from the IRS dated December 17, 2012 and advising him that an amended return must be filed within three years of the original return, a copy of a check dated December 31, 2005 in the amount of $1,300 and made payable to the Plaintiff's wife, a copy of a page from a request for admissions, and a copy of an internet page discussing the prohibition against retroactive modification of child support arrearages as a result of the "Bradley Amendment".

      As attachments to his response to the Defendant's motion for summary judgment, Plaintiff has submitted a copy of what appears to be part of the Internal Revenue Code, some additional material relating to his son and daughter, a copy of a letter from the Plaintiff to Annette Gordon dated September 7, 2011 discussing the $1,300 discrepancy in his alimony deduction for 2006, a letter to a Jeffrey Miller dated October 17, 2011 discussing the same issue, copies of various checks made out to Plaintiff's wife, a copy of an amended individual income tax return for the tax year 2005 apparently attempting to claim an alimony deduction for that year that had not previously been claimed (the amended return being dated March 2, 2012), a letter to the Plaintiff from the IRS dated May 21, 2012 stating that it could not allow that claim because it had been filed more than three years after Plaintiff had filed his tax return, a copy of a "To Whom it May Concern" letter to the IRS from the Plaintiff dated May 27, 2012 explaining why he had delayed filing his amended return,



copies of several letters from the IRS indicating it was reviewing the matter, including one noting that it was Plaintiff's 2006 account that was audited, not his 2005 account, a copy of another letter from the Plaintiff to the IRS dated October 15, 2012 asking for advice on how tax year alimony payments should be credited, a response dated December 17, 2012 advising Plaintiff that the alimony payment dated December 31, 2005 should have been included on his tax return for the tax period ending December 31, 2005, and that the three year period for filing an amended return for that tax return had expired, copies of a bank account statement for the year 2006, copies of a collection fee notice from the IRS dated January 13, 2011, a copy of a notice that part of Plaintiff's federal payment had been applied to a debt he owed, a notice dated November 16, 2011 notifying Plaintiff that all or part of his federal payment had been applied to a debt he owed, a copy of a refund notice from the South Carolina Department of Revenue dated October 6, 2011, as well as some additional copies of documents originally provided with Plaintiff's motion for summary judgment.

## Discussion

Both parties have moved for summary judgment in this case. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, to avoid summary judgment the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the



Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence submitted, the undersigned finds and concludes for the reasons set forth hereinbelow that the Plaintiff's motion for summary judgment should be denied, the Defendant's motion for summary judgment should be granted, and that this case should be dismissed.

The evidence in this case sets forth a straight forward sequence of events. In 2005 Plaintiff and his wife were in the process of getting a divorce, and on December 21, 2005 the family court entered a temporary order requiring Plaintiff to pay to his wife $1,500 per month alimony commencing December 1, 2005, and $1,500 per month child support commencing December 15, 2005, pending a final decree of divorce. Plaintiff did not make all of these required payments in 2006, but did claim a total of $30,227 in payments, all of which he listed as a deduction as being alimony payments. See Court Docket 40-4, p. 2, line 31a.[3] Thereafter, on November 25, 2008 the family court entered a Final Order and Decree of Divorce which provided for continued payment of alimony by the Plaintiff of $1,800 per month, with no provision for the payment of any further child support by the Plaintiff, although it did contain some provisions about both parties assisting their son

---

[3]This amount does not include an additional $1,300 represented by a check dated December 31, 2005, which Plaintiff now asserts should also be counted towards alimony payments for the year 2006. That issue is discussed separately herein, infra.



in obtaining gainful employment. See Court Docket No. 40-9, p. 4.

Thereafter, beginning May 26, 2009 Plaintiff was the subject of an IRS audit, which resulted in the disallowance of the full amount of alimony reported by the Plaintiff in 2006, and assessing a deficiency of $7,866 and a penalty of $1,573.20 for the 2006 tax year. Gordon Affidavit, ¶ 4; see also Defendant's Exhibit 3. As support for his deduction, Plaintiff provided the IRS with copies of nineteen checks payable to his spouse in 2006 totaling $27,200, and based upon documents provided by the Plaintiff, the Defendant allowed Plaintiff to deduct $16,700 for alimony (applying Plaintiff's payments first to that obligation), with the remaining $10,500 being attributable to court ordered child support payments. Based on this amount of deductible alimony payments, Plaintiff's tax deficiency was reduced to $3,550. See Defendant's Exhibit 9.

Plaintiff argues that all of the payments he made in 2006 should be classified as alimony payments (and therefore deductible) because his children were considered adults during that year pursuant to the applicable IRS rules dealing with age and residence requirements for dependents. However, whether or not either of Plaintiff's children *could have* been deemed not to be entitled to dependant status in 2006 is not the determinative issue in this lawsuit. If Plaintiff did not believe he should have been required to pay child support, then he should have made this argument to the state family court and sought a modification or change in the family court's order setting forth the terms of the separation pending the final divorce decree. Plaintiff spends a substantial amount of his time in his briefs complaining that the state family court erred in its decision, misapplied state law, and that there was no basis for him to be required to pay child support. However, Plaintiff apparently never sought a modification of that order, and indeed his obligation to provide payments to his wife



for child support was not ended by the family court until the final divorce decree in 2008.[4]

Section 71(c)(1) and (2) of the Internal Revenue Code specifically provides that any payment made pursuant to the terms of a divorce or separation instrument designated for the support of children of the payor spouse is not includable in the recipient's income (unlike alimony), and is not deductible. See 26 U.S.C. § 71(c)(1) and (2). Here, the court decree at issue clearly provided that only $1,500 per month of Plaintiff's payments to his spouse was alimony, with a directive that Plaintiff also pay an additional $1,500 per month to his spouse *as child support*. Therefore, Plaintiff has not met his burden of proving entitlement to the deduction he seeks in this lawsuit; cf. Indopco, Inc. v. Commissioner, 503 U.S. 79, 84 (1992) [Burden of clearly showing the right to the claimed deduction is on the taxpayer]; and Plaintiff is not entitled to relief on this claim. Cf. Ellis v. C.I.R., T.C. Memo 1990-456, 1990 WL 121144 (Aug. 23, 1990)[Finding husband was not allowed to deduct extra amount of alimony paid pursuant to oral agreement because it was not pursuant to a written agreement].

With respect to the issue Plaintiff argues in his briefs about a $1,300 payment Plaintiff made to his wife pursuant to a check dated December 31, 2005 (but which Plaintiff now complains should have been credited to his alimony payments for 2006), Defendant correctly notes that Plaintiff did not assert that as a claim in the Complaint he filed in this matter, nor is there any evidence that Plaintiff included that payment as part of his claimed alimony payments on his 2006 tax return.

---

[4] The Court is further constrained to note that the final divorce decree only included an alimony requirement of $1,800 per month. Therefore, it is readily apparent that Plaintiff is now attempting to obtain credit for payments made as "alimony" in an amount that the family court did not believe he owed or was required to make, that his spouse was entitled to, or even (apparently) that his spouse ever sought.

10



Further, when attempting to justify his deduction after he received the deficiency notice from the IRS in October 2009, this payment was not included as part of the evidence of payments Plaintiff submitted to the IRS at that time.  See Defendant's Exhibit 8.  This issue was also not raised in Plaintiff's Notice to the IRS of his attempt to appeal the IRS decision.  See Defendant's Exhibit 10. The first time Plaintiff apparently raised this issue with the IRS was in a letter to Ms. Gordon of September 7, 2011.  See Plaintiff's Exhibit 55.  However, Plaintiff's subsequent attempt in 2012 to amend his 2006 tax return to reflect this amount was disallowed, because a taxpayer has only three years to amend their tax returns after the filing of a tax return.  See Plaintiff's Exhibits 78-81.  See also First National Bank of Fayetteville v. United States, 727 F.2d 741, 744 (8th Cir. 1984)["A ground for refund neither specifically raised by, nor included within the general language of, a timely claim for refund cannot be considered by a court in which a suit for refund is subsequently initiated"]. Therefore, Plaintiff has not met his burden of showing entitlement to relief on this claim.  Indopco, Inc., 503 U.S. at 84 [Burden of clearly showing the right to the claimed deduction is on the taxpayer].

### Conclusion

Based on the foregoing, it is recommended that the Plaintiff's motion for summary judgment be **denied**, that the Defendant's motion for summary judgment be **granted,** and that in this case be dismissed.

The parties are referred to the Notice Page attached hereto.

_____  
February 4, 2014                               Bristow Marchant  
Charleston, South Carolina               United States Magistrate Judge



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a Defendants' Exhibit novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

